IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CHARLES DAVID BAYHAM, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:19-CV-00781-CAN |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability income benefits and social security income. After reviewing the Briefs, as well as the evidence contained in the Administrative Record, the Court recommends that the Commissioner's decision be **REMANDED**.

## I. PROCEDURAL HISTORY OF THE CASE

On April 7, 2016, Charles David Bayham ("Plaintiff") filed his application for disability income benefits ("DIB") under Title II of the Social Security Act [TR 225]. On April 26, 2016, Plaintiff filed his application for supplemental security income ("SSI") under Title XVI of the Social Security Act [TR 229]. Plaintiff originally alleged an onset of disability date of August 27, 2010 [TR 225, 229], but later amended the alleged onset date to July 2, 2014 [TR 15, 54]. Plaintiff was born on July 2, 1964 [TR 225], making him fifty (50) years of age on his amended onset date of July 2, 2014 [TR 15, 54]. Plaintiff's age classification at alleged onset was an individual closely approaching advanced age. *See* 20 C.F.R. §§ 404.1563(d).[1] Plaintiff completed the seventh grade

---

[1] Although Plaintiff states in his brief that his age classification was "person of advanced age" at the time of the ALJ's decision [Dkt. 14 at 5], such assertion is incorrect. Plaintiff did not obtain age fifty-five (55) until July of 2019, nearly a year after the ALJ's September 2018 decision.

and later acquired a GED [TR 57, 269].   Plaintiff has prior work experience installing telecommunications equipment [TR 56-57, 291-98].   Plaintiff stopped working after a work-related injury on August 27, 2010 [TR 298, 962, 1039].   Plaintiff retained sufficient coverage to remain insured through December 31, 2016 [TR 18].   Plaintiff's applications were initially denied by notice on October 24, 2016 [TR 151-58], and again upon reconsideration on July 31, 2017 [TR 161-66].   Plaintiff requested an administrative hearing ("Hearing") [TR 167-68], which was held before an Administrative Law Judge ("ALJ") on July 2, 2018 [TR 50-85, 184].   At Hearing, Plaintiff and a vocational expert ("VE") presented testimony [TR 51].   Plaintiff was represented by counsel at Hearing [TR 52].

On September 7, 2018, the ALJ issued an unfavorable decision denying Plaintiff's applications [TR 12-33].   Plaintiff requested Appeals Council review [TR 222].   On August 27, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner [TR 1-6].   On October 23, 2019, Plaintiff filed the instant suit [Dkt. 1].   On January 31, 2020 the Administrative Record was received from the Social Security Administration [Dkt. 9].   Plaintiff filed his Opening Brief on February 28, 2020 [Dkt. 14], and the Commissioner filed its Response in support of the Commissioner's decision on April 28, 2020 [Dkt. 15].   On May 8, 2020, Plaintiff filed his Reply to the Commissioner's Brief [Dkt. 16].

## II.  STATEMENT OF RELEVANT FACTS

The record indicates Plaintiff sustained injuries to his left shoulder in a workplace accident. Following the accident, Plaintiff sought disability benefits.   In his current applications, Plaintiff alleges the following illnesses, injuries, and/or conditions: left shoulder pain, left back pain, neck pain, nerve damage in left shoulder, damage to sternoclavicular area of left shoulder, depression, inability to reach, inability to push or pull, inability to climb ladders, inability to look up or turn

my head with extreme pain [TR 88-89, 101-02]. The ALJ found of Plaintiff's alleged conditions that his left shoulder injury, spine disorder, and affective disorder constituted severe impairments [TR 18].[2]

Of importance to Plaintiff's appeal are the medical records and opinions of treating physicians, Dr. Richard Levy, M.D. ("Dr. Levy") and Dr. Ahmed Mahmoud, M.D. ("Dr. Mahmoud"), as well as the opinions of the State Agency Medical Consultants ("SAMC") Dr. Robin Rosenstock, M.D. ("Dr. Rosenstock") and Dr. Denise Greenwood, M.D. ("Dr. Greenwood").[3] And also the testimony of the VE from Hearing and those excerpts from the ALJ's determination related to such physicians. The Court outlines each below.

### 1. *Medical Record Evidence*

#### a. **Treating Physician – Dr. Levy**

On March 8, 2012, Plaintiff was referred to orthopedic surgeon, Dr. Levy, after undergoing an unsuccessful rotator cuff surgery on his left shoulder following his workplace injury [TR 654, 957]. Dr. Levy ordered an MRI of Plaintiff's left shoulder which revealed "clear pathology within the rotator cuff" [TR 960]. Dr. Levy recommended surgery to repair Plaintiff's left rotator cuff [TR 960-61], which was performed on July 5, 2012 [TR 963]. During surgery, Dr. Levy found that Plaintiff had a "high-grade partial-thickness tear of the distal supraspinatus tendon" [TR 963]. Dr. Levy then repaired Plaintiff's torn rotator cuff using "[f]ull-thickness rotator cuff tag sutures" [TR 965]. Following surgery, on July 6, 2012, Dr. Levy noted that he was very pleased with Plaintiff's progress and noted there were no complications from the surgery [TR 966]. Dr. Levy

---

[2] The instant denial of benefits is not Plaintiff's first request for DIB. Plaintiff has previously filed an application for DIB which was denied [TR 89, 102, 115, 129, 289].

[3] The administrative record also contains medical opinions from Dr. Sreenadha R. Vattam, M.D. and Dr. Gregory S. Goldsmith, M.D., however, these opinions are not instructive on the issues before the court and thus will not be addressed.

evaluated Plaintiff's progress rehabilitating his should on five separate occasions, until July 16, 2013, when Dr. Levy released Plaintiff to work without restrictions [TR 971-72].  At this visit, Dr. Levy noted Plaintiff looked "active and healthy with no apparent physical problems" and exhibited normal gait, balance, reflexes, and no motor or sensory defects [TR 971].  These records predate the alleged onset of disability date.

Dr. Levy saw Plaintiff again on August 9, 2016, October 24, 2016, and November 14, 2016 [TR 973-76, 978].  Plaintiff was referred back to Dr. Levy, for Dr. Levy's consideration of whether Plaintiff's shoulder was causing his symptoms and chronic pain [TR 973].  Dr. Levy noted that Plaintiff presented with a normal gait, balance, and reflexes and no motor or sensory deficits [TR 973, 974, 976, 978].  Dr. Levy also observed during the August 2016 visit that Plaintiff had normal rotator cuff strength and no atrophy, bruising, or swelling in his shoulder [TR 974].  Dr. Levy performed a subsequent MRI on October 6, 2016, and noted that the rotator cuff looked normal [TR 975], and that the rotator cuff repair is still intact [TR 976].

### b.  Treating Physician – Dr. Mahmoud

On January 24, 2018, Plaintiff beginning seeing Dr. Mahmoud at the Texas Institute for Neurological Disorders [TR 1045].  Dr. Mahmoud met with Plaintiff for a consultation to discuss pain in his neck, back, and chest [TR 1045].  Dr. Mahmoud noted that Plaintiff described his pain as "pulsating, throbbing, shooting, stabbing, numb, crushing, burning and electric shock" and explained that his pain increases "with walking, bending, sitting, weather, lifting, and standing" [TR 1045].  Plaintiff rated his pain as a seven on his best days, on a scale from one to ten, and reported that it increased to a ten on his worst days [TR 1045].  Dr. Mahmoud noted that Plaintiff presented with a normal gait and normal range of motion in all major muscle groups, with no limb or joint pain with range of motion [TR 1046].

Dr. Mahmoud saw Plaintiff again on January 31, 2018 for a follow up appointment [TR 1049].  At the second appointment, Plaintiff indicated that his pain was a ten out of ten [TR 1051].  Dr. Mahmoud prescribed Plaintiff 5-325 milligrams of Percocet to begin treating his pain, noting that physical therapy and muscle relaxers did not alleviate his pain in the past [TR 1050].

On February 21, 2018, Dr. Mahmoud saw Plaintiff for a medicine check [TR 1052].  Plaintiff rated is pain as a nine out of ten at this appointment [TR 1054], and Dr. Mahmoud increased Plaintiff's Percocet dosage to 7.5-325 milligrams [TR 1063].   Plaintiff informed Dr. Mahmoud that he had taken a few extra pain pills because the pain was so severe, and Dr. Mahmoud instructed Plaintiff to refrain from doing that again [TR 1053].

Plaintiff returned to Dr. Mahmoud on March 21, 2018, for a follow up and medication refill [TR 1057].  At his March 2018 appointment, Plaintiff rated his pain as an eight out of ten, and Dr. Mahmoud noted that Plaintiff had only taken the prescribed amount of medicine [TR 1057].  Dr. Mahmoud continued Plaintiff on the increased dose of Percocet, 7.5-325 milligrams [TR 1058].  Plaintiff was seen again by Dr. Mahmoud on April 18, 2018, and again rated his pain as an eight out of ten [TR 1062].  Plaintiff's Percocet dosage was again increased, this time to 10-325 milligrams, and Dr. Mahmoud noted that if this increase did not help reduce Plaintiff's pain, he would switch Plaintiff to a different medication [TR 1063].

On May 16, 2018, when Plaintiff returned to Dr. Mahmoud's office, he was treated by nurse practitioner Lauri Shebesh, NP ("NP Shebesh") [TR 1065].  Plaintiff again reported his pain to be an eight out of ten [TR 1065-66], NP Shebesh continued Plaintiff on the 10-325 milligram dose of Percocet [TR 1067].  NP Shebesh saw Plaintiff again on June 14, 2018, when he came in for a four week follow up appointment [TR 1068].  Plaintiff informed NP Shebesh that his pain

had increased to a nine out of ten, and NP Shebesh noted that Plaintiff was short eleven pills, however Plaintiff explained that he had dropped his medicine in the sink and lost some pills down the drain [TR 1068-69].  NP Shebesh continued Plaintiff on the 10-325 milligram dose of Percocet again [TR 1069].

On July 3, 2018, a medical source statement ("MSS") was jointly completed by Dr. Mahmoud and NP Shebesh [TR 1074-76].[4]  Therein, Dr. Mahmoud and NP Shebesh indicated that Plaintiff could lift and/or carry up to ten pounds continuously, eleven to twenty pounds occasionally, and twenty-one to one hundred pounds less than occasionally [TR 1074]. Dr. Mahmoud and NP Shebesh determined Plaintiff could perform simple grasping and fine manipulation with both hands frequently and could only push/pull less than occasionally with either arm [TR 1074].  Plaintiff was further found to only be able to stand and/or walk, or sit, for less than two hours, and could only less than occasionally bend, climb, balance, stoop, kneel, crouch, or crawl [TR 1074-75].  Dr. Mahmoud and NP Shebesh found that Plaintiff required "complete freedom to rest frequently without restriction for more than [twenty] minutes per hour" in order "to relieve pain arising from a documented medical impairment" [TR 1075]. Dr. Mahmoud and NP Shebesh determined, based upon review of MRIs and CAT scans, that Plaintiff suffered from lumbar degenerative discs and lumbar spondylosis [TR 1075].  Plaintiff's pain was also noted to be severe, and his impairments were found to be "reasonably consistent with the symptoms and functional limitations described" in the MSS [TR 1075].  Dr. Mahmoud and NP Shebesh noted that Plaintiff's impairments were likely to produce both good and bad days and estimated that Plaintiff would be absent from work "more than four days per month" [TR 1076].

---

[4] Although the MSS was signed by NP Shebesh, the ALJ accepted the MSS as the opinion of Dr. Mahmoud and as being completed by him [TR 23].  The Court will treat it as such.

### c.   SAMCs – Drs. Rosenstock and Greenwood

On October 13, 2016, Dr. Rosenstock reviewed Plaintiff's medical records in connection with the initial agency determinations [TR 95-98].  Dr. Rosenstock found that Plaintiff had exertional limitations, including: occasionally lifting/carrying twenty pounds; frequently lifting/carrying ten pounds; standing and/or walking about six hours in an eight hour workday; sitting about six hours in an eight hour workday; and was limited in upper extremities, particularly left, for push/pull [TR 95-96].  Dr. Rosenstock further found that Plaintiff had postural limitations, including: frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and occasionally climbing ladders, ropes, and scaffolds [TR 96].  Dr. Rosenstock determined Plaintiff had "[m]ild limitations in exertion related to chronic pain syndrome" for his left upper extremity [TR 96].  Dr. Rosenstock found that Plaintiff had the following manipulative limitations: limited reaching in any direction, left in front and/or laterally and left overhead; and was unlimited in handling, fingering, and feeling [TR 96].  Dr. Rosenstock opined that Plaintiff did not have visual or communicative limitations [TR 97].  Dr. Rosenstock found that Plaintiff's environmental limitations included: unlimited exposure to extreme heat or cold, wetness, humidity, vibration, and fumes; but Plaintiff should avoid concentrated exposure to hazards [TR 97].  Dr. Rosenstock opined that the medical evidence of record "partially supports allegations yet alleged limitations are not consistent with the [evidence of record]" [TR 97].

At the reconsideration level, on July 5, 2017, Dr. Greenwood evaluated Plaintiff's records [TR 122-25].  Dr. Greenwood similarly found that Plaintiff had exertional limitations, including: occasionally lifting/carrying twenty pounds; frequently lifting/carrying ten pounds; standing and/or walking about six hours in an eight hour workday; sitting about six hours in an eight hour workday; and was limited to "occasional push/pull" with left upper extremity as waist level and

no overhead activity for left upper extremity [TR 123].  Dr. Greenwood further explained that the use of Plaintiff's left upper extremity for lifting and carrying is only to assist in balancing the objects [TR 123].  Dr. Greenwood also found that Plaintiff had postural limitations, including: frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and occasionally climbing ladders, ropes, and scaffolds [TR 123].  Dr. Greenwood opined that Plaintiff had "[m]ild limitations in exertion related to chronic pain syndrome" for his left upper extremity [TR 123].  Dr. Greenwood found that Plaintiff had the same manipulative limitations: limited reaching in any direction, left in front and/or laterally and left overhead; and was unlimited in handling, fingering, and feeling, explaining that "[r]eaching [was] limited to occasional in front and lateral with no [left upper extremity overhead] activity" [TR 123].  Dr. Greenwood opined that Plaintiff did not have visual or communicative limitations, but found him to have environmental limitations, including: unlimited exposure to extreme heat or cold, wetness, humidity, vibration, and fumes; but avoid concentrated exposure to hazards [TR 124].  Dr. Greenwood determined that the medical evidence of record "partially supports allegations yet alleged limitations are not consistent with the [evidence of record]" [TR 124].

### 2.  *VE Testimony*

The VE offered testimony at Hearing in response to several hypotheticals posed by the ALJ [TR 74-84].  The VE first classified Plaintiff's past relevant work history, indicating that Plaintiff worked as a communication equipment installer, DOT 822.361-014, medium, with an SVP of 7 [TR 75].  The ALJ then presented the following hypothetical to the VE:

> Please assume a hypothetical individual of the claimant's age, education, with the past work you described.  Further assume the individual is limited to occasional lift and carry of 20 pounds, frequent lift and carry of ten pounds, would be able to stand or walk for a total of six hours in an eight-hour day and sit for a total of six hours in an eight-hour day, could occasionally push and pull with the left upper extremity and occasional reaching in front or lateral – laterally with the left upper extremity.

> The left upper extremity would be used to assist the balancing of objects with a lift and carry in the right upper extremity. The individual could frequently climb ramps and stairs but no ladders, ropes or scaffolds, could frequently balance, stoop, kneel, crouch, and crawl, no unprotected heights or open and dangerous hazards or machinery, can understand, remember and carryout simple, routine and repetitive tasks and instructions, make simple work decisions and attend and concentrate on simple tasks for extended periods with normal breaks. Would such an individual be able to perform the past work you described?

[TR 75-76]. The VE responded that the hypothetical person could not perform any of Plaintiff's past work as a communication equipment installer, but there were jobs in the national economy that such individual could perform, such as: cashier (DOT 211.462-010), light, SVP 2; furniture rental clerk (DOT 295.357-018), light, SVP 2; and ticket seller (DOT 211.467-030), light, SVP 2 [TR 76]. The ALJ then presented another hypothetical:

> Let me add a second hypothetical with the same limitations except the – it would be limited to occasional lift and carry of ten pounds and frequent lift and carry of less than ten pounds. Am I correct there would be no transferability of skills to work within that RFC?

[TR 77]. The VE responded, "that is correct, Your Honor" [TR 77].

Plaintiff's counsel then proceeded with cross-examination of the VE [TR 77-79]. Plaintiff's counsel asked the VE if the jobs that she identified could be performed with occasional handling and fingering [TR 77], specifically, Plaintiff's counsel asked if the listed jobs would be precluded if the limitations for handling and fingering in the ALJ's first hypothetical were changed to less than occasional for one or both arms [TR 79]. The VE responded that the hypothetical individual would not be able to perform the identified jobs if handling and fingering were limited to less than occasional [TR 79]. Plaintiff's counsel then asked the VE "[i]f the claimant at any exertional level were required to take breaks as he testified of up to half a day, I'm assuming there's no jobs he could perform competitively" [TR 79]. The VE responded, "[t]hat is correct" [TR 79].

### 2.      ALJ's Disability Determination

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation [TR 12-27].[5]  At step one, the ALJ found that Plaintiff meets the insured status requirements of the act through December 31, 2016, and that Plaintiff had not engaged in substantial gainful activity since July 2, 2014, the amended alleged onset date [TR 18].  At step two, the ALJ found that Plaintiff had the following severe impairments: left shoulder injury, spine disorder, and affective disorder [TR 18].  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) [TR 18].  At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except with the following limitations:

- The claimant can lift and carry 20 pounds on an occasional basis.
- The claimant can lift and carry 10 pounds on a frequent basis.
- The claimant can stand or walk for six hours of an eight-hour workday
- The claimant can sit for six hours of an eight-hour workday.
- The claimant is able to push and pull with the left upper extremity, at waist level, on an occasional level.
- The claimant is never able to reach overhead with the left upper extremity.

---

[5] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability.  20 C.F.R. § 404.1520.  First, a claimant who is engaged in substantial gainful employment at the time of the disability claim is not disabled.  20 C.F.R. § 404.1520(b).  Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual function capacity, age, education or work experience.  20 C.F.R. § 404.1520(c).  Third, if alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404 Subpart P, Appendix 1.  20 C.F.R § 404.1520(d).  Fourth, a claimant with severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work.  20 C.F.R § 404.1520(e).  Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy.  20 C.F.R § 404.1520(f).  Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates.  *Id.*

- The claimant is able to reach in front and laterally with the left upper extremity, on an occasional basis.
- The claimant is also able to use the left upper extremity to balance objects that are lifted and carried with the dominant right upper extremity.
- The claimant is never able to climb ladders, ropes, or scaffolds.
- The claimant is able to climb ramps and stairs on a frequent basis.
- The claimant is able to balance, stoop, kneel, crouch, and crawl on a frequent basis.
- The claimant is able to work in jobs where he is never exposed to:
  - unprotected heights;
  - open and dangerous hazards; and
  - dangerous machinery.
- The claimant is able to understand, remember, and carry out simple, routine, and repetitive tasks and instructions.
- The claimant is able to make simple work decisions.
- The claimant is able to attend and concentrate on simple tasks for extended periods with normal breaks.

[TR 20-21].  Continuing the step four analysis, the ALJ found that Plaintiff is unable to perform any of his past relevant work as a telecommunications equipment installer (20 C.F.R. § 404.1565 and 416.965) [TR 25].  At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform" including cashier (DOT 211.462-010), light, SVP 2; furniture rental clerk (DOT 295.357-018), light, SVP 2; and ticket seller (DOT 211.467-030), light, SVP 2 [TR 26-27].  Based on this determination, the ALJ concluded that Plaintiff has not been under a disability from July 2, 2014, through the date of his decision [TR 27].

In reaching the determination of Plaintiff's RFC, the ALJ considered the medical evidence of record, opining in relevant part:

> I viewed the submitted medical source statement through the perspective of the regulations and their limits on such statements.  The RFC does not address a medical issue, but addresses an ultimate administrative finding, solely within the province of me.  As to evidence that would direct a conclusion of disability, I find the opinion neither valuable nor persuasive and gives it no weight.  As to these types of opinions, no analysis regarding how I considered this evidence is required or provided.  (20 CFR §404.1520b (c) and 416.920b (c)).

However, I did carefully and fully consider the opinion, albeit, as that opinion has been bound within the sphere of the regulatory factors, noting that the final responsibility for formulating the RFC remains with me.

I considered this opinion as to the nature and severity of the claimant's impairments and as to this issue give it little weight.  It is not supported by nor consistent with the claimant's treatment records.

The claimant also complained of similar debilitating pain in his right shoulder.  However, these allegations are not consistent with the claimant's treatment file.  The claimant testified he manages his pain with medications, by taking frequent hot baths, and by laying down.

[TR 22-23].

## STANDARD OF REVIEW

In an appeal under § 405(g), the Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994); 42 U.S.C. § 405(g).  A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett*, 67 F.3d at 564; *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  It is more than a mere scintilla and less than a preponderance.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.*  This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if the evidence is present.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.  Conflicts in the evidence, including the medical

evidence, are resolved by the ALJ, not the reviewing court.  *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

Disability insurance is governed by Title II, 42 U.S.C. §§ 404 et. seq., and SSI benefits are governed by Title XVI, 24 U.S.C. §§ 1381 et. seq., of the Social Security Administration.  The law and regulations governing the determination of disability are the same for both DIB and SSI.  *Greenspan*, 38. F.3d at 236.  The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393.  "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above.  20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff presents a single issue for consideration, whether the ALJ applied the correct legal standards to the opinions of Plaintiff's treating physician, Dr. Mahmoud [Dkt. 14 at 11].  More specifically, Plaintiff argues: (1) the ALJ incorrectly found that Dr. Mahmoud rendered opinions on issues reserved to the Commissioner [Dkt. 14 at 12]; (2) the ALJ failed to evaluate the *Newton* factors found in § 404.1527(c) [Dkt. 14 at 14]; and (3) the ALJ's failure to conduct such factor analysis was not harmless [Dkt. 14 at 16].  The Commissioner conversely argues that substantial evidence and relevant legal standards support the RFC assessment [Dkt. 15 at 4], and moreover, the ALJ properly evaluated Dr. Mahmoud's opinions in accordance with the relevant legal standards [Dkt. 15 at 9].  Because the Court finds that the ALJ failed to properly consider and discuss the *Newton* factors prior to giving less than controlling weight to Dr. Mahmoud's opinions, remand is proper, as discussed more fully *infra*.

*Applicable Requirements for Giving Weight to Treating Physician*

For applications filed prior to March 27, 2017, the federal regulations impose strict requirements for how the ALJ is to weigh the treating physician's medical opinions. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Relevant herein, 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and *Martinez*, and those courts' reference to subsection (d)(2) refer to the factors present at subsection (c)(2) of 20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (Aug. 24, 2012); *see also Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995). Moreover, for all claims filed on or after March 27, 2017, the Rules in § 404.1520c (not 1527) apply. Also, relevant, on March 27, 2017, the Social Security Administration rescinded Social Security Ruling 96–2p, which discusses giving controlling weight to treating source medical opinions, as well as two other related rulings. *Rescission of Social Security Rulings 96–2p, 96–5p, and 06–3p*, 82 FR 15263–01, 2017 WL 1105348, at *15263 (Mar. 27, 2017). [6] Under the new rules, adjudicators will not assign a weight, including controlling weight, to any medical opinion for claims filed on or after March 27, 2017. *Id.* However, because Plaintiff filed his claim on April 7, 2016 [TR 225], the ALJ was required to conduct the analysis related to his consideration of the medical opinions in the instant case. Although the Court recognizes that Social Security Ruling 96-5 was rescinded on March 27, 2017, its rescission was only "effective for claims filed on or after March 27, 2017." *Nathanson v. Comm'r of Soc. Sec. Admin.*, No. 5-18-CV-00167-RBF, 2019 WL 989646, at *6 n.3 (W.D. Tex. Mar. 1, 2019) (citing *Foy v. Berryhill*, No. CV CBD-

---

[6] SSR 96-5p explained how adjudicators should consider and articulate their consideration of medical source opinions on issues reserved to the Commissioner in the notice of the determination or decision. The final rules revised these policies for claims filed on or after March 27, 2017, in several ways. For example, in claims filed on or after March 27, 2017, adjudicators will not provide any articulation about their consideration of this evidence because it is inherently neither valuable nor persuasive to us. Therefore, this SSR is inconsistent with the final rules. *Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p*, 2017 WL 1105348, at *15263.

17-2743, 2018 WL 3707837, at *6 (D. Md. Aug. 3, 2018)).   In addition, the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") requires adjudicators to use SSR 96-5p "[f]or claim(s) filed before March 27, 2017" "throughout the entire appeals process." *Id.* (citing *Foy*, 2018 WL 3707837, at *6 (quoting HALLEX I-5-3-30, 2017 WL 1362776, at *5 (2017))).   Thus, SSR 96-5p is still relevant for purposes of Plaintiff's claim. *See id.* at *1 (finding that SSR 96-5p was applicable to claim filed by plaintiff on August 31, 2012).

Under the law applicable to Plaintiff's suit, "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton*, 209 F.3d at 455 (citing *Martinez*, 64 F.3d at 176) (alteration in original); *see also Esparza v. Berryhill*, No. 3:17-CV-154-L-BK, 2017 WL 6513634, at *4 (N.D. Tex. Nov. 27, 2017) (quoting *Martinez*, 64 F.3d at 176) (standing for same principle), *report and recommendation adopted*, No. 3:17-CV-154-L-BK, 2017 WL 6497898 (N.D. Tex. Dec. 19, 2017). The ALJ may give little or no weight to a treating source's opinion if good cause is shown. *Newton*, 209 F.3d at 455-56 (citing *Greenspan*, 38 F.3d at 237).   There is good cause where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Id.* at 456 (citations omitted). However, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only if* the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453 (emphasis in original).   The six factors that must be considered by the ALJ before giving less than controlling weight to the opinion of a treating source are: (1) the length of treatment relationship; (2) frequency of examination; (3) nature and extent of

the treatment relationship; (4) the support of the source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.  *See* 20 C.F.R. § 404.1527(c); *Newton*, 209 F.3d at 456.  An analysis of some of the factors, but omission of others, does not comply with *Newton*'s requirement "that an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Patino v. Colvin*, No. 3:15-CV-618-BF, 2016 WL 1664912, at *7 (N.D. Tex. Apr. 25, 2016) (finding the ALJ considered some relevant factors, but the omission of three factors was error).  The sufficiency or lack thereof of such analysis is a fact-based analysis.[7]

### General Statement That the ALJ Considered Opinion Evidence Insufficient

As an initial matter, the Commissioner asserts that the ALJ properly considered the regulations as the ALJ "cited the relevant regulations on at least three occasions in the decision" and stated that he "considered opinion evidence in accordance with the requirement of 20 CFR 404.1527 and 416.927" [Dkt. 15 at 9 (citing TR 21)], as evidence to support a sufficient *Newton* analysis.  The Court rejects this argument; the Commissioner has argued this position previously, and has been advised in each instance that the Fifth Circuit (and the Northern and Eastern Districts of Texas) has found boilerplate language stating the evidence was reviewed in accordance with the regulations insufficient.  *See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) ("And it should go without saying that cursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion").  An ALJ must do more than merely demonstrate awareness of the relevant regulation to satisfy *Newton*.  *See, e.g.*, *Salina*

---

[7] To be clear, "the Newton court limited its holding to cases where the ALJ rejects the sole relevant [treating or examining] medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009); *accord Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017).

*v. Saul*, No. 3:18-cv-1661-M-BN, 2019 WL 4060676, at *6 (N.D. Tex. July 31, 2019) (finding the statement that the ALJ had considered entire record with a cite to 20 CFR 404.1527 is not sufficient, on its own, to satisfy *Newton*) (citing *Nicaragua v. Colvin*, No. 3:12-cv-2109-G-BN, 2013 WL 4647698, at *6 (N.D. Tex. Aug. 29, 2013)); *Hill v Commissioner*, No. 4:16-CV-00025-CAN, 2017 WL 1049624, at *6 (E.D. Tex. Mar. 20, 2017) ("And, while the ALJ's Notice includes a boiler-plate line stating the evidence was reviewed in accordance with 20 C.F.R. 416.927(c)(2), this statement on its own is not sufficient") (citing *Gerken v. Colvin*, No. 3:13-CV-1586-BN, 2014 WL 840039, at *6 (N.D. Tex. Mar. 4, 2014)).

### Good Cause – Physicians' Own Treatment Records

The Commissioner further contends that Dr. Mahmoud's own treatment records contradict his opinions, providing the ALJ "good cause" to give Dr. Mahmoud's opinion "no weight" [Dkt. 15 at 11; *see also* TR 23].  However, once again, numerous recent cases have made clear that a physician's own records do not permit the ALJ to bypass the *Newton* analysis.  *Thomas v. Berryhill*, No. 3:16-CV-3453-BT, 2018 WL 1517861, at *4 (N.D. Tex. Mar. 26, 2018).  Consider the findings of the Northern District of Texas in *Howeth v. Colvin*:

> When records from the same treating physician appear inconsistent with other specifically stated opinions of that physician, the ALJ may deem the records inconclusive or otherwise inadequate to receive controlling weight, but unless there is "other medical opinion evidence based on personal examination or treatment of the claimant," *Newton* clearly requires the ALJ to "seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." The competing first-hand medical evidence exception to avoiding the detailed analysis of the six § 1527(c)(2) factors does not contemplate using other evidence from the same physician.

*Howeth v. Colvin*, No. 12-CV-0979-P, 2014 WL 696471, at *8 (N.D. Tex. Feb. 24, 2014) (internal citation omitted).  Thus, the ALJ or the Commissioner's reliance on any inconsistency in Dr. Mahmoud's own treatment records to forego the *Newton* analysis is incorrect.  *White v. Saul*, No. 4:18-CV-00745-O-BP, 2019 WL 4010240, at *6 (N.D. Tex. Aug. 26, 2019) ("Inconsistencies

within a treating source's own records 'do not justify bypassing the detailed analysis of the six factors.'") (citing *Perry v. Colvin*, No. 13-CV-2252-P, 2015 WL 5458925, at *9 (N.D. Tex. Sept. 17, 2015)); *see Clinton B. v. Saul*, No. 3:18-CV-932-C-BN, 2019 WL 3431590, at *5 (N.D. Tex. July 11, 2019) (holding that records from the same physician do not fall within the competing first-hand medical evidence exception noted in *Newton* even if they may appear inconsistent with opinions), *report and recommendation adopted*, No. 3:18-CV-932-C-BN, 2019 WL 3429813 (N.D. Tex. July 30, 2019); *Losasso v. Comm'r of Soc. Sec.*, No. 4:15-CV-00858-CAN, 2017 WL 1251076, at *8 (E.D. Tex. Mar. 24, 2017) ("The Court notes that inconsistencies between Dr. Ambavaram's own opinions do not fall within the competing first-hand medical evidence exception recognized in *Newton*.").

### Contradictory Evidence – Dr. Levy and SAMCs

In addition to arguing Dr. Mahmoud's own treatment records contradict his opinions, the Commissioner urges that the ALJ also more nebulously referenced that Dr. Mahmoud's opinions were not consistent with "[Plaintiff's] treatment records" [Dkt. 15 at 10-11]. The ALJ does not identify any specific records or physician opinions which are inconsistent with or contradict Dr. Mahmoud. The Commissioner contends in its briefing that Dr. Levy's opinions contradict Dr. Mahmoud, specifically Dr. Levy's "full work release" completed in July 2013, well before the alleged onset of disability date and either of Plaintiff's applications [Dkt. 15 at 11].[8] There is absolutely no discussion in the ALJ's opinion reflecting consideration by the ALJ of whether Dr. Levy's opinions contradict Dr. Mahmoud's opinions. *See Hill v. Comm'r, SSA*, No. 4:16-CV-

---

[8] Separate and apart from the lack of discussion by the ALJ of any inconsistency between Dr. Levy and Dr. Mahmoud's treatment notes and opinions, the Court notes that the "work release" form relied upon by the Commissioner was completed nearly a year before the relevant period and is a "check the box form". The Commissioner urges reliance on Dr. Levy's work release form is proper on the one hand [TR 971-72], while arguing on the other that reliance on the MSS completed by Dr. Mahmoud, which is also "check the box" format, is improper [TR 1073-76].

00025-CAN, 2017 WL 1049624, at *7 (E.D. Tex. Mar. 20, 2017) ("[T]he ALJ at no juncture made a finding that another treating or examining physician's opinion was more well-founded. . . Absent such a factual finding, the ALJ cannot avoid analyzing the Section 404.1527(c) factors when declining to give controlling weight to a treating physician"); *Furr v. Comm'r, SSA*, No. 4:16-CV-00821-CAN, 2018 WL 1457318, at *6 (E.D. Tex. Mar. 23, 2018) ("The medical opinions of Drs. Hayee and Fatima were not afforded less weight in the ALJ's Notice of Decision because they were considering non-treating sources.  [The] Commissioner's argument that Drs. Hayee and Fatima were not treating sources is an impermissible *post hoc* rationalization of the ALJ's decision.  'The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council.'").

To the extent the Commissioner intended to advance in its briefing that the ALJ relied upon Drs. Rosenstock and Greenwood's opinions in deciding to reject Dr. Mahmoud's opinion, the Court notes that neither Dr. Rosenstock nor Dr. Greenwood is a treating or examining physician. Because Drs. Rosenstock and Greenwood are SAMCs, their opinions are not sufficient controverting evidence to support the ALJ's complete rejection of Dr. Mahmoud's opinion as a treating physician.  An ALJ may not disregard a treating physician's opinion and sidestep the *Newton* analysis based solely on a non-examining SAMC's opinion.  20 CFR § 404.1527(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."); *see Osborn v. Berryhill*, No. 3:16-CV-44-B-BN, 2017 WL 2312910, at *3-4 (N.D. Tex. May 11, 2017) (finding because ALJ failed to identify any contradictory first-hand evidence the ALJ was required to proceed in applying the factor analysis) (citing *Newton*, 209 F.3d at 456), *report and recommendation adopted*, No. 3:16-CV-44-B-BN, 2017 WL 2306581

(N.D. Tex. May 26, 2017).  To be clear, the medical opinions of an agency consultant do not constitute first-hand medical evidence, because they were formed on a second-hand basis from a review of then existing medical records.  *Davis v. Berryhill*, No. 4:16-CV-0429-O-BL, 2017 WL 3701689, at *10 (N.D. Tex. Aug. 10, 2017), *report and recommendation adopted*, No. 4:16-CV-0429-O-BL, 2017 WL 3674856 (N.D. Tex. Aug. 25, 2017); *see also Steven T. W. v. Berryhill*, No. 3:18-CV-00030-BT, 2019 WL 1429347, at *6 (N.D. Tex. Mar. 28, 2019) (finding that "the non-examining state agency consultants' opinions taken alone would not be substantial evidence"); *Robinson v. Astrue*, 271 F. App'x 394, 396 (5th Cir. 2008) ("Wong performed a one-time consultative examination of Robinson and therefore is not due special deference as a treating physician."); *Romo v. Berryhill*, No. 4:17-CV-02163, 2018 WL 4146416, at *3 (S.D. Tex. Aug. 30, 2018) (citing *Newton*, 209 F.3d at 456-57) ("In *Newton*, the ALJ rejected the opinion of the treating physician based on the opinion of a non-treating, non-examining physician, which is improper."). The ALJ's reliance on either of the SAMCs opinions as support for rejecting the treating physician's opinions is misplaced.

### Medical Source Statements are Evidence Properly Considered in Assessing an RFC

The Commissioner does not argue, but the ALJ curiously seems to allege in the determination, that Dr. Mahmoud's medical source statement "addresses an ultimate administrative finding" thus entitling the ALJ to give it no weight [TR 23].  Both Plaintiff and the Government in their briefing concur that a medical source statement is properly considered by the ALJ in formulating the RFC [Dkts. 14 at 12; 15 at 8].  *See Winston v. Berryhill*, 755 F. App'x 395, 402 (5th Cir. 2018) ("Under the Social Security Act, a 'medical opinion' is a 'statement' from a physician, psychologist, or other acceptable medical source that 'reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and

prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions.'"); *Diaz v. Colvin*, No. L-13-170, 2014 WL 2002277, at *3 (S.D. Tex. May 15, 2014) (finding that a medical source statement is not a legal conclusion as to a plaintiff's disability, as the disability determination requires "an additional analytical step" past the medical evidence provided in a medical sources statement). Indeed, the Social Security Administration has defined medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527. Because the MSS provided by Dr. Mahmoud is not an opinion "on issues reserved to the Commissioner," i.e., a determination of Plaintiff's disability, the ALJ must have considered the findings of Dr. Mahmoud in determining whether Plaintiff was disabled.

### Consideration of Newton Factors

Under the circumstances presented here, the ALJ was required to perform an analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). *Darren Lamar L. v. Saul*, No. 3:19-CV-01878-L-BN, 2020 WL 4679541, at *9 (N.D. Tex. July 20, 2020) (citing *Newton*, 209 F.3d at 453), *report and recommendation adopted*, No. 3:19-CV-1878-L, 2020 WL 4673466 (N.D. Tex. Aug. 12, 2020); *see also Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009); *Boykins v. Berryhill*, No. 3:17-cv-571-BT, 2018 WL 1532373, at *4 (N.D. Tex. Mar. 27 2018) (citing *Yearout*, 2010 WL 4860784, at *10); *Hill v. Comm'r*, No. 4:16-cv-00025, 2017 WL 1049624, at *7 (E.D. Tex. Mar. 20, 2017) (concluding that, because "the ALJ at no juncture made a finding that another treating or examining physician's opinion was more well-founded than [another treating physician]," the ALJ could not avoid the relevant factor analysis). The ALJ's opinion is void of any such considerations. Indeed, the ALJ's opinion expressly recites that "no

analysis regarding how [the ALJ] considered this evidence is required or provided" [TR 23].
Notwithstanding, the Commissioner argues the factors can be found embedded in the ALJ's
determination and constitute a "narrative consideration."  In this regard, the Commissioner points
to the ALJ's recognition of Dr. Mahmoud as the "treating physician" [Dkt. 15 at 10].  A bald
assertion that a physician is a treating physician, without anything more, does not constitute a
consideration of the *Newton* factors.  *See Jones v. Colvin*, 638 F. App'x 300, 304 (5th Cir. 2016)
(finding the ALJ met the first three *Newton* factors "by recalling the details and diagnoses of
numerous appointments"); *Zayas v. Comm'r, SSA*, No. 4:16-CV-00230-CAN, 2017 WL 4270043,
at *8 (E.D. Tex. Sept. 26, 2017) ("The Court noted that the ALJ's discussion did not anywhere,
narratively or otherwise, discuss the length of treatment, frequency of examination, or any
discussion of the nature and extent of the treatment relationship.").

***Error Analysis***

The Court cannot say whether the ALJ would have given more weight to Dr. Mahmoud's
opinion and would have found Plaintiff disabled if the ALJ had conducted a more thorough
analysis of the relevant factors.  *See Palmer v. Berryhill*, No. 3:16-CV-2197-BF, 2017 WL
2079808, at *5 (N.D. Tex. May 15, 2017) ("Without an articulation of a detailed analysis of the
Section 416.927(c) factors, the Court is unable to state whether the ALJ would have come to a
different conclusion had she given more consideration to [the treating physician's] opinion.");
*Newton*, 209 F.3d at 453-58 (stating the Fifth Circuit requires the ALJ to consider each factor of
20 C.F.R. § 404.1527(c)(2), not just some factors).  In making the RFC determination, the ALJ
disregarded the treating physician's opinion [TR 23] that Plaintiff required "complete freedom to
rest frequently without restriction for more than [twenty] minutes per hour" in order "to relieve
pain arising from a documented medical impairment" [TR 1075], and that Plaintiff's impairments

were likely to produce both good and bad days and estimated that Plaintiff would be absent from work "more than four days per month" [TR 1076].  Moreover, Dr. Mahmoud further found that Plaintiff was only able to stand and/or walk, or sit, for less than two hours out of an eight hour work day [TR 1074], contradictory to the requirement that an individual be able to sit/stand for eight hours at the sedentary exertion level.  The opinions of Dr. Mahmoud support limitations greater than the RFC assessment.  And the VE testified on cross examination that "[i]f the claimant at any exertional level were required to take breaks" as Dr. Mahmoud opined, Plaintiff would be unable to maintain competitive employment [TR 79].  Had the ALJ considered such opinion evidence, it is conceivable that the ALJ may have come to a different RFC determination.  *See Nordin v. Comm'r, SSA*, No. 4:16-CV-00830-CAN, 2018 WL 1536897, at *6 (E.D. Tex. Mar. 28, 2018) (finding that the "error [was] not harmless" where the ALJ failed to properly evaluate the *Newton* factors and consider the testimony of the VE); *Davis v. Berryhill*, No. 4:16-CV-0429-O-BL, 2017 WL 3701689, at *10 (N.D. Tex. Aug. 10, 2017) ("In making her RFC assessment, the ALJ rejected specific medical opinions of Dr. Tondapu and Dr. McHenry.  To characterize their estimated absences as speculation ignores their medical judgment.  Had the ALJ considered the medical opinions regarding estimated monthly absences rather than simply rejecting them as speculation, it is conceivable that she may have reached a different conclusion."), *report and recommendation adopted*, No. 4:16-CV-0429-O-BL, 2017 WL 3674856 (N.D. Tex. Aug. 25, 2017).  As such, the error is not harmless.  Therefore, remand is required.  By remanding this case for further administrative proceedings, the Court does not suggest in any way that Plaintiff is or should be found disabled.

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's Decision should be

**REMANDED** to the Commissioner of Social Security for further proceedings consistent with this

opinion.

      **IT IS SO ORDERED**.

      **SIGNED this 30th day of March, 2021.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE